*D. L. Thornton, for appellant.*

*Porter & Wallace, for appellees.*

---

JOHN B. GILLESPIE *v.* T. G. BRADFORD.

[Abstract Kentucky Law Reporter, Vol. 4—439.]

**Change of Nature of Action by Amendment.**

One who as plaintiff in an original action proceeds to recover real estate and quiet his title thereto against the heirs, their vendees and tenants claiming an interest in certain real estate, when finding be-

fore judgment that he himself is without title, can not by purchasing the claims of the heirs who are defendants and then amending his petition in his original action have his right of recovery in the name of the heirs or under their title against those who entered as tenants or purchasers under such heirs.

### Process on Amended Pleading.

Where an amendment to an original petition is filed which seeks to quiet plaintiff's title and to quiet defendant's by showing the fact that since the original petition he had purchased certain interests of defendant heirs, it is held that such amended pleading is an original and independent cause of action and upon the amendment process should have issued and where none was issued the defendant was not required to take notice of the amendment.

### APPEAL FROM BRACKEN CHANCERY COURT.

November 18, 1882.

OPINION BY JUDGE PRYOR:

The history of this case as presented by the pleadings and proof shows that David Coleman was the patentee of a large tract of land lying in Bracken and Pendleton counties, and that during his life he conveyed to his son-in-law, Bengers, 5,000 acres of land, 3,000 acres of which was within the county of Bracken and 2,000 acres, or the greater part of it, in the county of Pendleton. The conveyance to Bengers was made in the year 1804. David Coleman, the patentee, died in the year ————, and after his death his son, James Coleman, or some of his descendants, by certain equitable proceedings obtained what is now claimed the title to all the unsold land of the patentee within the patent boundary both in Bracken and Pendleton counties. N. D. Coleman, who was a son of James Coleman, and a grandson of the patentee, claimed by purchase and otherwise to own all the land that had been purchased by James Coleman under the decree in the chancery court, Nicholas Coleman, by his agents, claiming the land that had been conveyed by the patentee to Bengers. The latter, or rather his heirs, Bengers being dead, instituted action for the recovery of the land and for a division. This resulted in a compromise between N. D. Coleman and the heirs of Bengers, by which Coleman became the owner of the 3,000 acres lying Bracken county, and Bengers' heirs of the 2,000 acres lying in Pendleton county. This compromise was made in 1850. In 1860 the agents of N. D. Coleman sold to this appellee,

Bradford, all of the unsold land lying in Bracken county. In running the line between the counties of Pendleton and Bracken a portion of the 2,000 acres belonging to Bengers' heirs extended into Bracken county, and the appellee, Bradford, being impressed with the idea that a fair construction of the compromise between N. D. Coleman and Bengers gave him all the land within Bracken county, instituted the present action against the heirs of Bengers, their vendees and tenants, asking for a construction of the compromise between Coleman and the heirs of Bengers; that his title be quieted and that he be put in possession. At that time the tenants and vendees of Bengers heirs were in the actual possession of portions of the 2,000 acres, and the appellant, Gillespie, had not entered as a tenant, but as a purchaser from the heirs of Bengers holding a bond for title. He is the only appellant on the present appeal. His title bond was dated in November, 1858, and called for 72 acres of the land and he had paid the greater portion of the purchase money. The heirs of Bengers filed an answer to the petition of the appellee asserting a title hostile to his, and that the land belongs to them by reason of the conveyance to their father and also by reason of the compromise made in the year 1850. The appellant also answered setting up his purchase of 72 acres from Bengers and also claims title to a small tract adjoining that purchase, under the will of his father. His father, as appears from the proof had entered on the 2,000 acres long before the purchase by the appellant of his 72 acres, and the father and son have held the possession for more than 25 years.

After the entry by appellant under his purchase he also claims to have taken possession of another portion of the 2,000 acres by extending his boundary and holding adversely to the title under which he entered. His claim, if hostile, was certainly not so open or notorious as to apprise the real owners, who were his vendees, of his intention to hold against them, nor are we prepared to say that any such adverse holding has been shown, but on the contrary the claim of the appellant under the facts of this record must be confined to the boundary upon which his father settled and enclosed, and the 72 acres purchased by him of Bengers' heirs. It is apparent from the compromise agreement between Coleman and the heirs of Bengers that the one (Coleman) took the 3,000 acres and the other (Bengers) the 2,000 acres. They were separate tracts and the terms of the agreement are so plain as to leave but little

room for construction. It is evident, therefore, that the appellee under his purchase from Coleman derived no title to the 2,000 acres, and in order to invest himself with title he undertook and did obtain a conveyance from the heirs of Bengers to the land in controversy, and then was allowed to file an amended pleading by which he was permitted to use the title of the parties under whom appellant entered and of whom he purchased the 72 acres, to enable him to recover. This amended pleading was in the nature of an ejectment and sought the recovery of the land under the title of Bengers, which the latter had sold to the appellant. The amended pleading was, in fact, an admission on the part of the appellee that the appellant had the title, and whether so or not, the record shows that Bengers' heirs had the title and that appellant had purchased from them.

The appellee no longer had a standing in court, for if Bengers' heirs had no right to maintain the action, they could not by a transfer of their title vest the appellee with such a right. This reasoning applies to the land purchased and not to the land devised by the appellant from his father. The proof shows that the father of appellant entered upon his tract and claimed it adversely to the world before appellant made his purchase of the 72 acres, and there is nothing inconsistent with appellant's right to claim one tract under Bengers and the other under his father. Regardless, however, of this question it would be an anomaly in the practice to permit the appellee, who in the original action had proceeded against the heirs of Bengers and their vendees and tenants, when finding that he was without title, to purchase the claim of Bengers, and then by an amended pleading to have his right of recovery in the name of Bengers' heirs or under their title as against those who entered as tenants or purchasers under Bengers. Besides, it appears by a subsequent amended pleading that some of the infant heirs of Bengers had never conveyed to the appellee and he was permitted to use their names in the prosecution of the action as their next friend. This was error. In fact the appellee had made out no cause of action until he filed an amended pleading to the effect that since the filing of the original action and the amendments the appellant had gone into bankruptcy and his assignee had conveyed to the appellee the land in controversy. This amendment was filed without any objection and only a few minutes before the judg-

ment of eviction was entered. The conveyance by the assignee shows that it was made subject to any claim of homestead the appellant might assert. It was an original and independent cause of action and upon the amendment process should have issued. The appellee had shown no right of recovery and was attempting not to perfect a defective title, but to acquire a title after the institution of his action so that he might recover. The appellant was not required to take notice of the amendment. The titles the appellee exhibited by his amendments were all hostile to his original claim, and that claim was without title. The entire record prevents an anomaly in pleading. The appellee institutes his action without title and ends by purchasing the title of the vendors of those who were on the land, and finally alleges that he has acquired the title of those in possession. The record claims of title are inconsistent as also are the pleadings and after a careful examination of the record we see no ground for a recovery unless the appellant upon the return of the cause should make no objection to the filing of the last amended petition which is in fact an original petition. If he sees proper to join issue with the appellee on that pleading the case can progress; if objection is made the case should be dismissed without prejudice and the appellee left to institute his action on the conveyance from the assignee in bankruptcy.

The judgment is *reversed* and cause remanded for proceedings consistent with this opinion.

C. H. Lee, for appellant.

Stevenson, O'Hara & Bryan, for appellee.